AMERICAN MULTIGRAPH SALES CO. v. GLOBE INDEMNITY CO.

(June 24, 1929. Opinion and Decree.)

L. R. Wertheimer, of New Orleans, attorney for plaintiff, appellee.

Monroe & Lemann, and Walter J. Suthon, Jr., of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is an action by the plaintiff against defendant as surety on a sequestration release bond. Plaintiff claims to have obtained a judgment for $607.50 against the defendant in a former suit, with recognition of its vendor's lien and privilege on the property for which the sequestration release bond was given in the original suit. The petition alleges that a fi. fa. was directed against the defendant in the first suit and, having been returned nulla bona, that plaintiff had exhausted its remedies against the said defendant in the suit, and was entitled to hold the defendant, in the present suit upon the sequestration release bond, as surety.

Defendant admitted the execution of the bond, but denied liability on the following grounds:

First, that in the original suit judgment was rendered on November 8, 1926, and signed on November 15, 1926, in favor of the plaintiff and against defendant, without recognizing and maintaining plaintiff's vendor's lien and privilege upon the property sequestered, and therefore was a mere personal judgment in favor of plaintiff and against defendant that had the legal effect of rejecting plaintiff's claim on the writ of sequestration and plaintiff's assertion of the vendor's lien and privilege, thereby releasing and discharging the surety from any liability on the bond.

Second, that on January 19, 1927, long after the said judgment had become final, and after plaintiff, on November 25, 1926, had issued a fi. fa. based thereon, plaintiff and defendant in the original suit sought to amend the judgment on joint motion of plaintiff and defendant therein, so as to incorporate therein a provision recognizing and maintaining the vendor's lien and privilege upon the property seized, and for which the sequestration release bond had been given; that the order of court based on the joint motion to amend the original judgment is null and void for the reason that said judgment in the original suit was final, and accordingly not within the power or jurisdiction of the district court to amend the same.

Third, that the defendant in the original suit, having been placed in the receivership proceedings, that the receiver had no power or right to waive any legal right or defense of said receivership and, even if effective between the parties consenting thereto, could not bind or create a liability upon the defendant as surety upon the sequestration release bond.

There are other alternative defenses which we do not consider necessary to recite, in view of the conclusions that we have reached. There was judgment in favor of plaintiff in this suit for $650 and defendant herein appealed.

The facts leading up to the question which this court must decide on the present appeal are somewhat complicated, and involve three different suits in the Civil District Court.

On July 10, 1924, the American Multigraph Sales Company sued the Peach-Blo Products, Inc., on a written contract to recover the balance of the purchase price of $607.50 for certain equipment.

The original petition did not ask for the recognition of the vendor's lien and privilege on the equipment, but, by supplemental petition, plaintiff in said suit asserted its vendors' lien and privilege upon the property sold, and prayed for and obtained a writ of sequestration. On April 30, 1925, the defendant in said suit obtained an order authorizing the release of the property sequestered upon furnishing a bond in the sum of a thousand dollars, which bond was signed by the Globe Indemnity Company, as surety, the present defendant herein. This bond was executed and filed on May 1, 1925.

While this suit was pending and untried a receiver was appointed in the Civil District Court for the Peach-Blo Products, Inc., on April 7, 1926. The property released by the sequestration bond was inventoried as an asset by the receiver, and sold separately in the receivership proceedings for the sum of $100. In the final account of the receiver, the state and city taxes, which primed the vendor's lien of the American Multigraph Sales Company, were paid out of this fund of a hundred dollars, completely consuming same. In the meantime, on November 8, 1926, an ordinary judgment was obtained by plaintiff against defendant, in the original suit, without recognizing or maintaining the vendor's privilege asserted by plaintiff. It appears that the district court judge intended to place a decree in the judgment recognizing the vendor's lien and privilege, and maintaining the writ of sequestration, because the clerk was instructed to draw up judgment as prayed for. However, the clerk erroneously followed the original petition in the original suit, which did not pray for recognition of the vendor's lien and privilege and for a writ of sequestration. This judgment was signed on November 15, 1926, and the delays for a new trial and suspensive appeal elapsed without any party to the suit asking for a new trial or a suspensive appeal. Plaintiff in the original suit caused a fi. fa. to be issued on November 26, 1926, which was returned nulla bona on December 19, 1926. Plaintiff then filed a rule for a judgment against the Globe Indemnity Company, as surety on the sequestration release bond, on December 9, 1926. This rule was dismissed on January 7, 1927, upon exception of defendant in rule on the ground that plaintiff should have proceeded by direct action and not by rule.

Thereafter, the plaintiff evidently discovered the omission from the judgment of the decree maintaining the sequestration, or recognizing the asserted vendor's privilege. On January 19, 1927, two months after the signing of the ordinary judgment, plaintiff obtained the signature of the attorney for the receiver of the defendant in the original suit, to a joint motion to the effect that the recital of the maintenance of the vendor's privilege was erroneously omitted from this judgment. Upon the basis of this motion, the district judge signed an order on the same day to the effect that the judgment be amended so as to include the words "with recognition of plaintiff's vendor's lien and privilige upon the property seized." The surety on the sequestration release bond never consented to or authorized this amendment.

On January 25, 1927, the present suit was instituted by plaintiff against defendant as surety on the sequestration release bond, upon the basis of the judgment rendered in the original proceeding on November 15, 1926, and amended judgment of January 19, 1927. The case was tried on its merits on October 17, 1927, and resulted in a judgment for plaintiff against defendant for the sum of $650, which judgment was signed on October 25, 1927, and

from which defendant prosecutes this appeal.

On November 10, 1927, the American Multigraph Sales Company, as plaintiff in the original suit, filed a petition for a devolutive appeal from the ordinary judgment rendered on November 8, 1926, and signed November 15, 1926. The evident purpose of the appeal is to have this Court supply the omission from the judgment of a decree maintaining the writ of sequestration and recognizing the asserted vendor's lien.

We will first take up the question as to whether or not the judgment in the original suit, in its original form, could form the basis of a claim against the surety on the sequestration release bond. This judgment was a mere personal or ordinary judgment in favor of plaintiff against the defendant, with no mention of sequestration or the vendor's privilege. A judgment in this form, in an action accompanied by a sequestration, has the legal effect of dissolving the sequestration and discharging a surety on the sequestration release bond from all liability under that bond.

In the case of Nalle vs. Baird, 30 La. Ann. 1148, the holding of the Court is summarized in the syllabus, as follows:

"No recovery can be had against the surety on a release bond, given for the release of the sequestered property on which the plaintiff claims a lien, where the judgment is a merely personal one against the principal on the bond, containing no recognition of the plaintiff's lien or privilege on the property released, nor decreeing a restoration of the property to the plaintiff."

The law requires that the judgment in favor of plaintiff in the sequestration suit must contain a specific decree maintaining the sequestration, or recognizing the asserted privilege, in order to impose liability on the surety on the sequestration release bond. Article 280, Code of Practice, reads:

"The security thus given by the defendant, when the property sequestered consists in movables, shall be responsible that he shall not send away the same out of the jurisdiction of the court; that he shall not make an improper use of them; and that he will faithfully present them, after definitive judgment, in case he should be decreed to restore the same to the plaintiff."

Article 724, Code of Practice, reads:

"Provisional seizures and sequestration give no privilege to those who have made them, until they have obtained a judgment and order of execution on the property sequestered or provisionally seized."

Illustrations of the form of judgment necessary to impose liability on a surety upon a sequestration release bond show that the failure to recognize the vendor's lien and privilege, or maintain the writ of sequestration of plaintiff in the original suit, was fatal to its right to hold defendant herein on the sequestration bond.

Perret vs. Coleman, 115 La. 814, 40 So. 176.

Pick & Co. vs. Dickinsons, Inc., 154 La. 1068, 98 So. 669.

It is a well recognized principle of law, in attachment and sequestration cases, that a judgment is presumed to cover every phase of the case and, accordingly, where a judgment is silent upon a particular item of relief demanded by the plaintiff, that silence has the legal effect of rejecting that portion of plaintiff's demand. The following quotations from authorities amply show that the above principle of law is well founded in our jurisprudence:

"Besides, the mere passing over this demand in silence was a rejection of it."

Soniat v. Whitmer et al., 141 ·La. 235, (p. 240), 74 So. 916, 918.

"His judgment is silent on the amounts claimed in reconvention by the defenda- t. His silence must be construed in law as rejecting the same."

Rauxet vs. Rauxet, 38 La. Ann. 669 (p. 671).

"Our jurisprudence has rested on a solid foundation, the rule that all the issues presented by the pleadings, and on which evidence has been offered, will be considered as disposed of by a final judgment in the cause, and that demands passed over in silence must be considered as rejected in the absence of a special reservation."

Villars vs. Faivre, 36 La. Ann. 398 (p. 400).

"But where the plaintiff in a suit demands the recognition of his privilege and right of pledge, and allows judgment to be rendered for the debt only without mention of the accessory rights demanded, the judgment is conclusive against these rights."

Nalle vs. Baird, 30 La. Ann. 1148 (p. 1150).

"Privileges are 'stricti juris' and must be clearly established by those who assert them. Pretermitting the expression of an opinion as to whether or not Nicolson & Co. novated their claim for paving by taking the promissory note of Stinson, and thus lost their privilege, it would seem that the judgment which they obtained against Stinson on that note should be conclusive against their claim now asserted to be a privilege. That judgment, we have seen, did not allow the privilege, although claimed in that suit."

Nicholson vs. Citizens' Bank, 27 La. Ann. 369 (p. 370).

"But when the plaintiff prays for recognition of a privilege and the judgment is silent in regard to it, it amounts to a denial of it."

Cazzo vs. Ulrich, 13 Orleans App. 257 (p. 259).

The court is therefore of the opinion that no liability on the part of the Globe Indemnity Company, defendant, as surety upon the sequestration release bond, resulted from the original judgment in the original suit rendered on November 8, 1926, and signed November 15, 1926, and that the legal effect of that judgment was the rejection of plaintiff's demand on the sequestration phase of the case, and the consequent discharge of the surety from any liability on the sequestration release bond.

We next pass to the question of the right or the authority of the district judge to amend the judgment, after the delay for a new trial and suspensive appeal had elapsed, so as to recognize the vendor's privilege and maintain the writ of sequestration.

A judgment is "the property of him in whose favor it is given." C. P. 548. The judgment in question was in favor of the surety on the sequestration release bond in that the absence of a decree maintaining the sequestration worked the release of the surety from liability on the bond. Article 556 of the Code of Practice provides:

"Definitive judgments may be revised, set aside or reversed:
"1. By a new trial.
"2. By appeal.
"3. By action of nullity.
"4. By rescission.
"This last mode can only be exercised by minors or persons who were absent when judgment was rendered against them."

The following authorities clearly show that the district judge was without power, authority, or jurisdiction, to amend the judgment in the manner herein sought to be done.

"If a mistake occurred, or any error exists, in the original decree, the remedy therefor, or correction thereof, must be sought in this court by the aggrieved party, by way of an appeal, or by an answer to the appeal."

Spence vs. Spence, 160 La. 430 (p. 433), 107 So. 294, 295.

"The judgment appealed from, under the guise of a professed interpretation, is really an amendment and alteration of the original judgment, in clear violation of the laws on that subject. C. P. 547, 548, 556."

Factors & Traders' Ins Co. vs. New Harbor Protection Co., 39 La. Ann. 583 (p. 585), 2 So. 407, 409.

"The defendants are appellants from a judgment which they contend was irregularly rendered, after a former judgment had been signed three days after the verdict had been given, and no motion made for a new trial. The district court expressing its opinion, that it could correct its own judgment during the term, even 'ex officio,' and accordingly rendered a second judgment in greater conformity to the verdict than the first.

"We are of opinion the judge erred. The Code of Practice, 547, allows the court to make certain amendments, which it enumerates, until the judgment has been signed. This is certainly an affirmative, pregnant with the negative, that no amendment can take place after the judgment has been signed, nor before, except in one of the enumerated cases; but we have a positive provision on this subject. A judgment, when duly rendered (in the French text signé) becomes the property of him in whose favor it has been given, and the judge cannot alter the same, except in the mode provided for by law. Id. 548."

Flint, Syndic vs. Cuny et al., 6 La. 67 (p. 68).

See also Act 10 of 1926; White vs. Louis, 149 La. 677, 90 So. 20; Larose vs. Naquin, 145 La. 1025, 83 So. 230.

Counsel for the plaintiff has cited the case of State vs. F. B. Williams Cypress Co., 132 La. 949, 61 So. 988, Ann. Cas. 1914D, 1290, as an authority that the amendment was permissible.

We have carefully examined that case and find that it is clearly distinguishable from the present case, because

the Supreme Court held that it had the power to amend a mathematical error patent on the face of its own judgment, where the judgment had not been sent to the district court for recognition and execution.

In discussing the the articles of the Code of Practice with reference to limitation of the authority of courts to amend their judgments, the Supreme Court, in the Williams case, pointed out that the prohibitions were not against the Supreme Court, but against the district court, and in State vs. F. B. Williams Cypress Co., 132 La. 964, 61 So. 993, said:

"It will further be remembered that Article 547 of the Code of Practice contains very specific prohibitions against any meddling by the district courts with their judgments which have become final, but that law directs no such prohibition against this court, and the reason may perhaps be found in the fact that errors in the judgments of district courts may be corrected by appeal by action of nullity or by means of writs of certiorari, which this court is authorized to issue. * * *."

We now take up the third defense, i.e., the lack of authority of the attorney for the receiver of defendant in original suit to consent to the amendment of the judgment, and that, even if properly authorized, should not bind the surety on the sequestration release bond as a third person, but only the receiver. We find it unnecessary to discuss the authority of the attorney for the receiver to give such consent, because, even if properly authorized, we have reached the conclusion that such action on his part could not bind the surety on the sequestration release bond, a third party.

In Carroll vs. Hamilton, 30 La. Ann. 520, the court said:

"The fifth assignment is to the refusal to permit the defendants to prove that

the judgment was merely by consent, and therefore not binding on them. This was error. It is well settled that consent judgments are only binding as such between the parties, and have not the effect of judgments regularly rendered contradictorily, as regards third persons. See Taylor vs. Sweet, 3 La. Ann. 34; Reynold's Curator vs. Mahle, 12 La. Ann. 426; Robeson vs. Robert, 6 La. Ann. 2; Fletcher vs. Cavalier, 4 La. Ann. 276; Clarke vs. Scott, 2 La. Ann. 907; Allison vs. Thomas. and Rosenfield, 29 La. Ann. 732."

In Baker vs. Frellsen, 32. La. Ann. 822, an injunction case, the court said:

"The surety on an injunction bond has incurred obligations, but has certain rights which cannot be taken away from him without his consent. He is entitled to see the case tried according to law; a judgment rendered on the confession of the principal of his bond would bind the principal, but would not affect the surety. The case in which the bond is furnished should be called and disposed of in open court, under the forms and with the delays prescribed by law. His obligations must be strictly but legally construed. They consist in satisfying any judgment which the principal may be condemned to pay. It cannot be supposed that it ever entered the mind of the lawgiver and of sureties in such cases that a judgment rendered on the confession of the principal, or without his having been regularly dealt with, could saddle a responsibility on the surety on such bond. We think that the omission to have proceeded regularly in obtaining the judgment rendered and to have ventured its validity on the agreement mentioned, entitles the surety, made appellee, to ward it off, and that he cannot be held responsible and liable on a judgment thus obtained."

On rehearing, the court reached the same conclusion on this phase of the case, saying (p. 831 of 32 La. Ann.):

"We held that the judgment against Baker was not binding on Ludeling, because he was not a party to the agreement whereby the case was to be de-cided in chambers, out of term-time, and because, for the reasons stated in our former opinion, he could not be liable. This appeal is from the judgment dissolving the injunction. If Ludeling was not bound by the agreement and by the judgment, which was irregular and nugatory as to him, and that very judgment could alone fix his liability herein, how can we assess damages against him, unless we arbitrarily supply what we deem to be a fatal defect? The consent of the parties to the trial of the matter in which Ludeling was sought to be made liable, in the manner in which it was tried, without his assent, and the appellant having selected and adopted such course, we think operates as a discharge of the liability of the surety on the injunction bond, and that issue is distinctly presented in this appeal."

A case which strikes us as being in point is Herrick vs. Conant, 4 La. Ann. 276, in which the court held that no claim against the surety on a sequestration release bond could arise from a confession of judgment in a sequestration suit made by the defendant in that suit, after his cessio bonorum. In the instant case, defendant in the original suit, which consented to the amendment of the judgment, was insolvent and in the hands of a receiver, presenting the same situation as obtained in the above cited case. The holding in that case is well stated in the syllabus:

"A judgment confessed by an insolvent after a cessio bonorum made and accepted cannot affect the property ceded, which, from the time of the cession, was vested in the creditors; nor will such a judgment in favor of the vendor of moveables, who had sequestered them before the cession confessed, after the cession, by the insolvent, who had released the property on a bond before his cession, be binding on surety in the sequestered bond."

And in the body of the opinion, the court said (Siess vs. Couvillion, 4 La. Ann. 277:

"A judgment rendered under these circumstances, we consider as not binding on the surety. Pothier on Obligations, 816, par. 61. Clarke v. Scott, 2 La. Ann. 907."

From the foregoing, it would seem that the consent of the defendant in the original case, while insolvent and in the hands of a receiver, could not have the effect of binding the surety, on the sequestration release bond, if the surety did not consent to the amendment of the judgment.

In view of the conclusions above reached we deem it unnecessary to pass upon the alternative defenses.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Globe Indemnity Company, and against plaintiff, the American Multigraph Sales Company, dismissing plaintiff's suit, all costs to be paid by plaintiff and appellee.